May it please the Court, Counsel. Your Honor, we're here on an FLSA case that was tried to the bench before Judge Moses. Maverick County presents four points of error that we're asking this panel to review. I'll start with the first point of error, and that has to do with Maverick County's claim that it was prejudiced, highly prejudiced, by the appellee's failure to make Rule 26 disclosures and also to provide meaningful answers to interrogatories. Now, in an FLSA case such as this, the county was very interested in trying to learn how the appellees had calculated their claims of unpaid wages in the hours they claimed they worked. This work is particularly important because the appellees testified that the work they performed was off the clock. In other words, it was before they punched in or after they punched out. So the county did not have the benefit of actual payroll records that would show hours worked or overtime wages that were calculated. So it's important to hear from the plaintiffs in the case, tell us what your claim is. If the court is familiar with the record, this occurred in the backdrop of a DOL investigation that had started before the lawsuit was filed. The county had fully complied with the DOL investigation, so there were issues and questions regarding who was part of that investigation, who may have received payments. The record shows that the county fully cooperated with the Department of Labor, opened up its doors, allowed the DOL investigator full access to payroll records, and had issued, I think the record is something in the neighborhood of $31,000 in back payments. So it was very important to hear from the plaintiffs in the case what their calculations were so that we could compare them to what was previously paid. The record shows that none of the plaintiffs, none of the appellees ever made a Rule 26 disclosure. It wasn't until the summer preceding the trial, I want to say it was in July of 2017, that we attended a pretrial hearing before the US Magistrate. And we brought these issues to the table. The county at the time was suffering a pretty severe financial problem. It was having difficulty making payroll, paying legal fees, and meeting its other expenditures. So my task was to bore full speed ahead on trying to resolve the case by learning what the claims for unpaid wages were. And we never received full responses. The magistrate, Judge White, issued an order from the bench directing the appellees to answer interrogatories. And if you look at the record, Your Honor, you'll see the interrogatories were simply provide a calculation of your damages. We never got it. And in a few instances, we got very incomplete answers. We filed a motion to strike before the court asking that the court dismiss those plaintiffs who failed to make Rule 26 disclosures, which was everybody, and those plaintiffs who failed to make meaningful calculations in their interrogatory answers. And the court did dismiss some, but not all. The prejudice, of course, is very apparent in the record when plaintiff after plaintiff takes a stand, and we're essentially blindsided with highly inflated amounts of overtime that were requested by the plaintiffs. You'll also note the comments. Just after you've heard the first two or three, were you blindsided anymore because it was going to all be similar amounts of time? Of course. But you knew that at that point that probably they were going to say similar amounts of time, weren't you? Which is why we filed a motion to strike because we knew that was – and it was no surprise to us that the amounts, even from the interrogatory answers, you had some that testified it was six to ten hours every two weeks. Okay. And at that point, can you educate us on what objections were raised? When they testified to things that hadn't been in the disclosures, what specific objection was made and what was the specific ruling? We filed an oral motion to strike. That was the objection. You moved to strike damages because they were – I mean the hours, which were the damages, because they had not disclosed them in Rule 26. Correct. We made a – I made an oral motion to strike asking the court basically assess a penalty, excluding that testimony or disallowing that testimony to strike the plaintiffs from the opt-in class precisely for that reason. If I recall correctly, Judge Moses carried the motion until after the conclusion of the bench trial and then denied it in a subsequent order. So that's the answer to your question, Your Honor. But there was an opportunity to cross-examine the day that you've never told us before that you've had these damages and blah, blah, blah, these hours.  The record is clear with the cross-examination of these are numbers that you're coming up with now on the stand. The judge even made comments which are in the record. If I may quote her. For example, on 21 of our brief, in referencing record 3195, the judge comments, in fact, this last gentleman, his first calculations, he was working 20 hours a day, seven days a week, the whole last time. That was on direct. And when you start looking at the hours, at 100 hours, he's working 20 hours a day. I'm like, okay, that's possible. I get it's possible and I believe it's possible that for some months on end we're starting to get too much of the craziness going on. And she was commenting about these wildly inflated amounts. At one point she refers to what started as a claim that was a guppy has turned into a whale. But how is that not showing that she was exercising her supervisory discretion and perhaps thought if it was too outrageous, then it wouldn't be awarded? So the problem with this is these are quintessential trial judge determinations who are on the spot and can make these determinations. The same thing about the witnesses in the courtroom and that sort of thing. I'm with you, Your Honor. You have a case that has said it is actually reversible error to have not stricken witnesses and testimony under these circumstances. You have cases that are about the other topic, you know, where they did strike. But where the court decides not to, do you have any case in all the? I guess the way I'd respond to that, Your Honor, is I feel like if we'd applied Rule 26, the four corners of the rule, we would never have gotten there. And I understand because it was a bench trial, you raised a very practical consideration. I think at one point Judge Moses says, well, I'm the finder of fact. I can determine the credibility of the witnesses and assign the appropriate weight, which I think speaks to your point. The problem we have is had the court properly exercised its discretion to exclude the testimony from the get-go because of a failure to make disclosures and a failure to answer interrogatories, we would never have gotten there. And she did that. Judge Moses did that with some of the other plaintiffs who were struck because they failed to answer interrogatories. So I guess my point would be we should never have gotten to that point of assessing their credibility. It's as objectionable as we find it, considering that some of these inflated hours doubled from interrogatory to testimony on the stand. So that's the issue on the Rule 26 disclosure. I think the other issue that I wanted to bring to the Court's attention is the issue of the sequestration order. On the second day of trial, I was examining Mr. Orta, who testified that on the way to the courthouse that morning, he was with another plaintiff and they discussed their case. The testimony is pretty clear for the Court to review. He goes on to testify that while in the hallway, he had discussions with other opt-in plaintiffs about the amounts that they were going to present to the Court, essentially composing a script, which, when you analyze that consistently with the overinflated hours, is highly prejudicial. Now, the Court, at the beginning of the trial, acknowledged our request to invoke the rule. And we quote Judge Moses' order that basically says, if you violate the rule, I shall exclude your testimony. You cannot discuss this with other plaintiffs. And the record contains clear evidence that they discussed the amount of hours that they were going to present to the Court and the amount of compensation they were going to present to the Court. And so we believe that the Court should have excluded all of that testimony as a sanction for violating the very rule. I mean, why have a sequestration order if you're not going to enforce it? And I don't mean to be provocative in the question, but I would ask the same thing about the Rule 26 disclosure. Why have a rule that says, without request for discovery, you must produce your calculation if you're not going to enforce it? If at the end of the day, well, we'll just let it all in and see what comes out in the wash, which is what we think happened. But getting back to the sequestration order, the judge, I think, focused on a settlement conference that she suggested in the middle of the day. Basically, myself and Mr. Levy were requested to talk about possible settlement, which the county was always interested in, and we did so. And the judge, I think, looked at that and said, well, perhaps in this sort of quasi-mediation settlement conference, there was some discussion about hours and some comparative notes about the amounts of damages that were going to be requested. But the record doesn't support that. If you review Mr. Orta's testimony, he describes having these discussions on the way to the courthouse that morning, well before the settlement conference. He also describes having discussions with the other opt-in plaintiffs in the hallway. That wasn't a settlement discussion. So, again, when parties violate a very clear sequestration order, there should be consequences. And we requested that those individuals be struck. The judge, in her discretion, decided not to. We think that was an abuse of discretion because these people admitted scripting their testimony and coming up with comparative hours. The third point of error that I want to address is the court's application of the three-year statute of limitation. As we know, in an FLSA claim, the standard statute of limitation is two years. It can be extended to a three-year period if the evidence shows that the county acted with reckless disregard. Okay? That's from the McLaughlin v. Richland shoe case. Read within the context of McLaughlin, a failure to make an adequate inquiry must be more than a negligent or unreasonable failure. And that's, again, out of McLaughlin. So what exactly happened here? I've already covered that the plaintiffs in the case claimed that they were working off the clock. So there's no time record that's going to show, oh, well, this gentleman worked five hours of overtime for which he wasn't paid. We didn't have that. Mr. Rito Valdez, the treasurer for Maverick County, testified that he had a checks and balances system in which all time cards were reviewed, they were double-checked by an auditor, and checks were issued. The plaintiffs in the case testified that they never brought their complaints of unpaid overtime to the treasurer or to the commissioner's court. Instead, they raised the issue with the secretary at the sheriff's department who said, well, it's just the way it is. Okay. Where is this argument again? Your Honor, it is – and I'm looking at appellant's brief. It starts on page 22, Roman paragraph 3. Okay. And the cases I read are on 24. So it's part of the argument about their willfulness. Correct. Your limitations period is within that. Correct. Because if you look at the – Because they weren't the people at the time when they came on board. That's correct. We don't believe that given the county's checks and balances system in place in which time cards were reviewed and double-checked by a second set of eyes, that that rises to the level of the reckless indifference. They can't fix a problem they don't know about. So – What do you seek with regard to the attorney's fees argument? Well, that's our last point of error. Yes. I came into this case midway through. I replaced the prior county attorney. And I worked with Mr. Levy very cordially in working the case. There were no depositions taken. My clients made it a point to tell me, because of a lack of funds, to be very, very frugal with attorney's fees and try to resolve the case. At police propounded, no discovery. We had a two-day bench trial. The case was largely dormant for months at a time. And I share some responsibility in that. We were working through Mr. Levy, some of his personal issues. He had medical issues in his family. No work was done. It's a two-day bench trial. So we believe, the county believes, that the number of hours, over 150, that the trial court set was well in excess of what was actually spent. Just by looking at the – if you look at the docket sheet, there are long periods of time where nothing is being done. And then, of course, the second element we challenged was on the Johnson factor regarding the recovery. This started off as a little south of 40 plaintiffs, and at the end of the day, the recovery was – What relief do you seek? Do you seek for us to, say, do this again with more precision? Or are you, say, seeking some sort of rendering today? We seek the first option, Your Honor. I think the rule in the standard review would be to remand it back to the trial court for further fact-finding, consistent with the court's opinion. Thank you. You've saved time for rebuttal. Thank you, Your Honors. You may. Your Honor, this – Your Honors, this case involves deputy sheriffs who were not paid overtime, and not related to Mr. Sanchez's fault. There were previous counsel who were not responsive in this case, and there was considerable delay. And to this day, these deputies have not received their overtime, and they admitted that there had been a violation of law the date of trial. So it was not really a surprise. We knew there was a violation. However, there was no – all prior attempts at trying to settle this matter for the fact that there had been a violation of law and that they were not paid overtime were unsuccessful. And they had maintained a position that there had not been a violation of law. However, they ultimately admitted it. And to address the last point first, if I may, about the attorney's fees, there is no objection to the fee application with regard to any of the hours submitted by my co-counselor and myself. Not one objection was made. Not one entry was examined by the defendants. It was noted by the district judge in her order, and I believe we outlined it in our brief that they never preserved that error on appeal. With regard to just capping an arbitrary amount of 150 hours, this is a case that did not necessarily need to go to trial. It could have been resolved had they admitted liability early on. However, we were forced to go to trial with seven days' notice. And there were periods of inactivity, but however, on the fee application, with all of the hours, none of the periods of inactivity had any attorney fee hours in that inactive time. Some of the previous delay, although I did have personal issues that resulted in delay later on in the case, the early delay related to previous counsel for defendants, not Mr. Sanchez, but some other lawyers who were not responsive. And those lawyers, and including present counsel, they never responded to the disclosures providing us with any pay records. All of the information sought in the disclosures that they're complaining about were provided to them in interrogatory responses. They were duplicative questions. So all of the damage calculations that the plaintiffs had in this case were provided to them. So your position is that every single plaintiff who got up and testified, it was 20 hours or whatever it was, that that had been produced in discovery as to every single plaintiff, the amount of hours and the amount of money requested. They answered those interrogatories and were directed and crossed on those exact issues. None of that was— No, but I mean, so that was—I'm sorry, I'm being pretty snickety. Yes, the answer is yes, Your Honor. Okay, so it was not just cross-examination, but they had the information before trial about every single one of them. Right, and if they—correct, Your Honor. And they failed to depose any of those plaintiffs. They had ample opportunity to— But they didn't need to depose them if the information in the—I mean, if they had the interrogatories and they matched what they testified at trial? Well, they cross-examined them and tore up some of those responses, however, but yes. But it wasn't higher than what had been in the interrogatory. Some of them, their position was at trial that they didn't understand some of those responses. However, they never sought to compel a different answer. They did it all on cross. So there was never a complaint about those responses. There was just never—there was never any preservation of that complaint until trial, until they filed a motion to strike at trial. Had they complained about those discovery responses, other than—I'm excluding the people who never responded to discovery. They didn't show up at trial. They didn't—those people were struck by the court. There were seven people. There seems to be some sort of disconnect because what are they moving to strike on if they already have all the information in the disclosures? Because— There was not a response to disclosures. It came in the form of interrogatory responses, Your Honor. But it's the same— Correct. It has all the same amounts as the disclosures and all the calculations. When I pull this, is this going to be the case? Yes. The individuals who did not respond to the discovery were stricken by the judge. Right. So some people got stricken. But if I were to look at the interrogatories, the interrogatories are going to contain all the information that they would have been entitled to on the disclosures? That's correct, Judge. They attempted to answer the question of how they calculated their damages. Then what in the world was the strike based upon if they have all this information down in the interrogatories that's exactly the same as what the disclosures would be? That's what I'm not— I mean, this was a bench trial with admitted liability and two days of proxy examination of approximately 12 witnesses, I think. Where do I find this in the record? Well, every witness—I would have to pull that, Your Honor. I don't have it. Okay. Every single witness, the defendant introduced their interrogatories and cross-examined them. Okay. So when we go through the trial, we'll be able to see them back side by side. Okay. I would put the witness on. They would cross them and introduce the interrogatory and cross them. So that's pretty much how the trial went. At the end of the first day, we worked until about 1 in the morning, I believe. I was just discussing this with the opposing counsel. The judge called us into chambers, asked us if we would try to settle the case. It wasn't an informal meeting between opposing counsel and ourselves. I brought all the plaintiffs into an empty courtroom upon the judge's order. We all came in. We discussed the trial proceeding and tried to settle, and they did the same in another room that they were provided. And we tried to go back and forth, and we spent half a day doing that. We were unable or unsuccessful in settling the case and finished the trial with the judge. And so it wasn't just a let's talk about numbers. It was a full-blown take all your clients, Mr. Levy. I'll give you courtroom number two, and we did that, which addresses the reason why the judge mentions that in her order or her judgment when she talks about their allegations of a violation of the rule. It's our position that they're parties to begin with. But even if the last witness did state what he said on the stand, he was cross-examined about it. The judge warned him about it. The judge took it into consideration. I think she even mentioned in her judgment that they had asked, some of those people had asked for excessive amounts of hours in their direct examination. She gave them the smallest amount that she felt possible based upon her determination of their credibility. So she cut them. She cut them significantly. She thought they were getting the number from the other. She said that she understood that I think or believe what she said in her order is that they seemed like they were more aligned in their testimony the second day, which was also after the mediation. So she said, I don't know what it's due to, but she cut it down to an hour a week of overtime versus five or six that they were asking for. But we do know what it was due to, right? I mean, at least one of them specifically said in response to the cross-examination, and you all talked about it, yes, sir. And that's sworn and under oath. So we agree that there's a violation of the rule. The only question is what is the remedy? Right. For that particular plaintiff, the last plaintiff to testify said that, I believe from memory, on the stand that plaintiff said that they drove over in their sheriff's car and discussed the case. These were two witnesses that had not testified yet, talked about the case on the way to the courthouse, their party plaintiffs. Then in the hallway, I believe under cross-examination, said, yes, I talked to them. Or said that I talked to them in the hallway. But they had also talked with all of the parties when we were in the mediation only a few hours before, and the judge said, I believe that I don't like hearing that, but I'm going to make a determination that this is not a violation of the rule. How is that not? I mean, it seems like it literally is a violation of the rule. I mean, you're not supposed to talk. You all talked about it. Yes, sir. And the thing that we're talking about is the 20 hours per month. I mean, it's in the cross-examination colloquy. I understand how that looks on black and white. However, the judge seemed to indicate when she was reprimanding the plaintiff and reminding them of the rule and talked about the issue that we had all gotten together and discussed all of the evidence in the case and tried to talk about a settlement that was fair for everybody. So she made a determination, and perhaps— Can I ask you about her determination? How much did this plaintiff get? I could look it up in the judge. That was Horta. I can give you the record site. It's 3148 to 3149. Because at the beginning of the colloquy, the question is, now that amount of 20 hours per month, did you compare those notes with any of the other plaintiffs on how many hours they were going to ask for, and then there's some hemming and hawing, but the bottom line is, quote, but I believe so. So they're comparing notes about their hours. The judge—these plaintiffs testified that they worked a significant amount of hours, that they were paid on an eight-hour shift and paid 40 hours a week regardless of how many hours they worked. They all testified that at a minimum they worked more than eight because they had an hour of work. At the end of the day, when they get back to the station to do their paperwork and then a lot of them talked about how they would have five and six hours over the eight-hour shift, she gave them all about that one hour. That's all she gave them. So she cut it back from them asking for their days where we work eight—we don't work eight, we work 10, 12, 13, 14, 15 hours times six or five days a week, and she cut it down to essentially giving them an hour, five hours of overtime. And she alluded to that in chambers. She told opposing counsel, if you do the math, if I give you all five hours of overtime, which was so signal, I guess, if I give you all five hours of overtime, which is the minimum, that number is a significant number, you need to go settle this case. And that number was approximately what she awarded in unliquidated damages. And that's where that comes from. So did you argue to her that they were parties to whom the rule did not apply? No, I did not argue that. This is just an argument you have for today? Yes, that's correct, Judge. Okay. And she did—and she definitely made a determination about whether the rule had been violated or not? She, from my memory, and I think opposing counsel will agree, she said that I want—this is a warning, and I want the plaintiffs to tread lightly— or the parties to take this warning and to be careful going forward. I think this is what she said, something along those lines. So that's not really a ruling? I'm not sure. I don't recall an actual— She did rule at the end of the trial, Judge. I'm talking about during that testimony. She did rule at the end of the trial that she did not believe there was a violation. Okay. And it could be because she believes they're parties, but that wasn't argued to her, but she might—or it could be because she determined they had learned it in mediation, or it could be that she was in error, and all of those things are in the possibility. The county makes the argument that all the parties have a financial interest in the case. They do that in their brief. They're not class action actors, as the court knows. They're collective action parties to the case, so they're party plaintiffs. So it isn't—they are all employees who have to join actively in the case. They're significantly more than the number of plaintiffs in the case than actually joined in the case. Okay. Thank you. I mean, I wasn't trying to cut you off if you had something else. When I said thank you, you were answering my question. I was saying thank you, but if you had seven minutes and if you had something else, it really wasn't my intent to cut you off, but you immediately— The only thing I wanted to mention was with regard to willfulness, Your Honor. Okay. I'm not trying to confuse the two different standards for liquidating them through your statute. With regard to willfulness, there had been a violation in 2005 resulting in a Department of Labor determination that wasn't just a finding of a violation. It was found to be willful. They assessed civil money penalties, CMPs, which are penalty dollar damages. As the court knows, those are only reserved when there's cases of willfulness. Then there was a second audit that occurred. Prior to that audit, there was information that the deputies had complained, not only to the Department, to the Human Resource Department, but they complained in actual county commissioners' meetings. The only evidence that was offered, and mind you, there was no evidence offered by the defendants at any time. They never offered any additional evidence with regard to time worked. They didn't offer any witnesses with regard to time worked. It was simply cross-examination of the plaintiffs. This was a case where they had never produced time records, so there was a violation with regard to—it was their burden of proof. In other words, it was a deferment of defense on the hours. Okay. They never produced any evidence on that. When it came to the issue of willfulness, they provided no evidence of good faith other than that they began to comply after the Department of Labor found a second violation in 2011. So prior to the second DOL investigation, they offered no evidence in the record that they acted in good faith to try to act in compliance with their failure to pay. And as we've correctly briefed, Your Honor, the failure to have funds is not a mitigating defense or a show of good faith. As a matter of fact, they have the ability to pay comp time. Private employers don't if they don't have the money in the payroll, and they can offer paid time off, and they didn't do that. So that's all I have, Your Honor. Okay. Thank you. You may. Let me address the sequestration issue because Justice Oldham is correct. There was a clear violation when Mr. Orta had discussions with co-plaintiffs about the amount of hours that they were going to compose the script. At the beginning, on day one of the trial, and I'm quoting the judge's statement on the record, which is at 3308, the rule has been invoked. That means you may not discuss your testimony with any other witness or in their presence. Any violation of the rule would mean that I would strike the testimony of the people listening as well as your testimony. That was day one, first thing in the morning, and that's on page 12 of the brief. But is she talking about witnesses or is she talking about parties? I think they're one and the same. Are they? That's the problem with the invoking of the rule as we do it in Texas. You realize there's an ambiguity. There is, but I think if we look at the purpose of the rule, which is a witness's testimony, whether that witness is a party, talking about his own hours of overtime, shouldn't be scripted with the testimony of another witness, whether that person is making a claim or not. I understand what you're saying, and it has a lot of common sense to it as well, but I just don't know if she found that the rule had been violated. Your Honor, it's my recollection that she did find a violation of the rule, but she did not feel it was prejudicial. There are a number of times in the course of the proceedings where, again, we're talking about a bench trial, where she says, I'm going to make the foul. If she adjusted the money, then it wasn't prejudicial. Well, in answer to Justice Oldham's question about how much Mr. Orta Yes, how much? Do you have the answer to that? I do. Good. In the citation of the record, Your Honor, is 2704. 2704 is page 21 of the court's order. It's a spreadsheet. It looks like this, and it has everyone's name on it. Mr. Orta appears. His damages are calculated at $12,843, one of the highest amounts awarded. When you add the liquidated damage that the court assessed, his grand total take-home is $25,687.33. And you can see every other plaintiff on this particular page and the amounts they received, which is why the county objected so strenuously to this composing, this colluding on the amount of hours, because it resulted, it contributed to an extreme prejudice in the amount that was awarded by the court, a total of $569,000, based on hours that these guys jotted down and came up with on the way to the courthouse. Now, with regard to the discovery, there were no Rule 26 disclosures. Out of the entire class, only 13 bothered to answer their interrogatories. And of those 13 answers, some of them were meaningless answers. I think I worked X amount of hours. Now, there was some suggestion that perhaps the plaintiffs didn't understand the interrogatory, but it was very straightforward. A standard Western District damage, provide your damage calculation, the manner and means that you came up with it. There's nothing particularly hard about it. And then the court, her comments when she saw this, I'm on page 19 of our brief, and it's at record 3196, commented, this is the judge speaking, it's amazing how they all have different numbers in their interrogatories and they all very magically come in and say 15 hours per week all of a sudden. And they never said it in their interrogatories. The court directed a question to counsel for the appellees, where is this coming from? She's not giving them the 15 hours. No, no, they're coming up with these. No, but that's what I'm saying. Because she's at liberty in the bench trial, she's adjusting this all down as she goes. She's not believing them, but she's assuming that there is some time, and she's awarding that time. Or she's not assuming there is some record that there is some time, but she's not buying their testimony. Isn't that what happened? That's why the damages overall are so much less than what was requested. Getting back to my response my first time up here, Your Honors, we should never have gotten there. If a party doesn't comply with the rule and provide a Rule 26 disclosure. Well, that's another thing. He says that they did, but they were just in the form of the interrogatory answers. Is that true? There were none, zero Rule 26 disclosures. Out of the only 13 answered them, and most of the answers were nonsensical. They didn't provide any calculation.  If we looked at them, that's just not true. I urge you to look at the interrogatory answers. There's no comprehensible. There are a few. I will concede there were probably a handful who took the responsibility seriously and sat down and tried to answer the question. But when you review those interrogatory answers as part of the record, they don't provide a summary of tell me how many hours you're claiming, the dates that you claim that you worked them, and the amounts you're seeking. You won't find very many plaintiffs who answer that question in a meaningful manner. Thank you. Thank you, Your Honors. We appreciate your helpful arguments today, and this case is submitted. It would be dismissed? You may be.